**TEXAS & PACIFIC RAILWAY COMPANY,**
Petitioner,

v.

**Clarence T. McCLEERY, Respondent.**

**No. A–11491.**

Supreme Court of Texas.

July 26, 1967.

Rehearing Denied Oct. 4, 1967.

Jackson, Walker, Winstead, Cantwell & Miller, L. P. Bickel and Gerald W. Benson, Dallas, for petitioner.

Geary, Brice & Lewis, Ray G. Besing, Thompson, Knight, Wright & Simmons, Frank Finn, Jr., Dallas, for respondent.

CALVERT, Chief Justice.

In an opinion delivered in this case on April 12, we wrote at considerable length

in disposing of a contention which we understood respondent to be pressing upon us. In his motion for rehearing, respondent asserts that we misunderstood his contention and disavows the interpretation we placed on his argument. Whether our writing on the question was due to our inability to understand respondent's argument or to misleading emphasis in which it was cast, is now immaterial; the contention is no longer in the case, and the writing should be eliminated. Accordingly, the opinion delivered on April 12 is withdrawn and the following is substituted therefor.

This suit for damages for personal injuries, brought by Louis D. Hardgrave and Clarence T. McCleery against Texas & Pacific Railway Company, The Southern Pacific Company, and Texas & New Orleans Railroad Company, grew out of a collision between a Texas & Pacific train and a truck operated by Hardgrave in which McCleery was riding as a guest or passenger. The collision occurred at a point where the railroad track crosses South Lamar Street in the City of Dallas. As the case reaches this court, Hardgrave, The Southern Pacific Company and Texas & New Orleans Railroad Company have gone out of the case. The only question to be decided is whether there is in the record evidence of probative force to support a jury finding that operation of the train on the occasion in question at a rate of speed in excess of 12 miles per hour was a proximate cause of the collision.

The case was tried to a jury. In answer to special issues, the jury found Hardgrave guilty of certain negligent acts and omissions which were proximate causes of the collision, but that none of such acts or omissions was the sole proximate cause of the collision. In answer to other issues, the jury absolved The Southern Pacific Company and Texas & New Orleans Railroad Company of any negligent conduct which was a proximate cause of the collision, but found that the Texas & Pacific train was being operated on the occasion in question at a rate of speed in excess of 12 miles

per hour, that such operation was negligence and that such negligence was a proximate cause of the collision. The verdict would normally have required a judgment that Hardgrave take nothing against the various defendants, but that McCleery recover his damages as found by the jury from Texas & Pacific. See Dallas Ry. & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379 (1952). However, the trial court disregarded the jury findings of negligence and proximate cause in the operation of the train at a speed in excess of 12 miles per hour and rendered judgment that both Hardgrave and McCleery take nothing by their suits. The court of civil appeals held that there was evidence to support the foregoing jury findings and that the trial court erred, therefore, in disregarding such findings and in rendering a take-nothing judgment against McCleery. Having so held, the court of civil appeals then considered and sustained cross-points of error presented by Texas & Pacific by which it urged that the evidence was factually insufficient to support the findings. The court of civil appeals then severed McCleery's cause of action against Texas & Pacific and as to such cause reversed the judgment of the trial court and remanded the cause for a new trial. In all other respects the judgment of the trial court was affirmed. Hardgrave v. Texas & Pacific Ry. Co., Tex.Civ.App., 401 S.W.2d 693. Only Texas & Pacific complains of the judgment. It asks that the judgment in the severed cause be reversed and the judgment of the trial court be affirmed.

By proper points of error Texas & Pacific asserts that the court of civil appeals erred in holding that there is in the record evidence of probative force to support the jury's findings that operation of its train on the occasion in question at a speed in excess of 12 miles per hour was negligence and a proximate cause of the collision. Evidence bearing on the questions to be decided is set out in the opinion of the court of civil appeals in considerable

detail. It will be considered here only in summary.

The collision occurred at about 11:15 p. m. The night was clear and the streets were dry. The train was composed of five engine units and 129 freight cars and was crossing South Lamar Street, traveling from west to east. The truck was approaching the crossing from the south. A wigwag signal was located south of the track. A Dallas city ordinance in force at the time limited the speed of trains in the city to 12 miles per hour. The engineer knew of the ordinance but was operating the train at the time at a speed of approximately 25 miles per hour. The truck ran into the south side of the train while the train was in process of crossing the street. To this point the facts appear to be undisputed.

■ The engineer testified that he did not see the approaching truck and did not know there had been a collision until he was advised of it by a radio message after the train had left the City of Dallas. He could give no testimony concerning the circumstances surrounding the collision. McCleery did not see the train approaching or crossing the street. He heard Hardgrave say, "there's a train," but remembered nothing of events occurring thereafter until he regained consciousness sometime later in the hospital. Hardgrave was the only eyewitness to the collision, and if evidence is to be found in the record in support of the jury's findings, it must be found in the testimony of Hardgrave and in reasonable inferences to be drawn therefrom and from testimony and other evidence concerning physical facts. In deciding whether there is such evidence we must honor the well established rule which requires that we view the evidence in its most favorable light in support of the verdict. Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359 (1957).

Viewed most favorably in support of the jury's findings, the evidence showing the circumstances surrounding the collision may be summarized thusly: The train was moving toward and across South Lamar Street at a speed of 25 miles per hour and the truck was moving toward the railroad track at a speed of 15 to 20 miles per hour. The train began its approach to the crossing at a distance of 1,320 feet. The wigwag signal was activated by the train's passing over a relay switch located 983 feet west of the crossing. Neither Hardgrave nor McCleery heard a whistle or a bell and neither saw the wigwag signal working.

Obstructions west of the street and south of the track greatly reduced the normal range of vision of both the engineer and Hardgrave; the train should have been visible to Hardgrave and the truck to the operator of the train when the truck was 90 feet from the crossing and the train was 234 feet therefrom. McCleery did not see the approaching train and Hardgrave did not see it until it was "almost on the road." When Hardgrave saw the lead engine unit, the truck was some 55 to 75 feet from the track. Hardgrave immediately applied his brakes and tried to turn to his right. The front of the truck crashed into the side of the moving train, the truck was spun around with the rear hitting the train and was thrown against a signal post. Skid marks of the truck leading toward the track measured 48 feet. The only evidence of the point of first impact was found on the fifth car behind the engine units. Four of the engines were each 50 feet long, one was 55 feet, and the cars were each at least 40 feet long. There is no evidence that any of the train crew saw the truck at any time.

For purposes of this opinion, we will assume that the finding of negligence is supported by evidence of probative force. The question is thus narrowed to whether there is in the record evidence of probative force to support the finding of proximate cause. The well established law of this State is that proximate cause includes two essential elements: (1) foreseeability, and (2) cause in fact or causal relation. Baumler v. Hazelwood, 162 Tex. 361, 347 S.W.2d 560 (1961); Hopson v. Gulf Oil Corp., 150 Tex.

1, 237 S.W.2d 352 (1951). From the evidence hereinabove detailed, it is quite clear that the jury could reasonably have inferred that the operator of the train should have anticipated and foreseen injury to motorists approaching and crossing the track on South Lamar Street as a natural and probable result of the excessive speed of the train. Therefore, the question is further narrowed to whether there is evidence of probative force that the excessive speed was a cause in fact of the collision and of respondent's injuries.

■ Negligent conduct is, in law, a cause in fact of harm to another only if it is a substantial factor in bringing about the harm. Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352, 355 (1951). Other than in situations in which the conduct of more than one person contributes to the harm, negligent conduct cannot be regarded as a substantial factor in bringing about the harm if the harm would have been sustained even if the actor had not been negligent. *Hopson*, supra; Radley v. Knepfly, 104 Tex. 130, 135 S.W. 111 (1911); Restatement (Second) of Torts § 432 (1965); 2 Harper & James, The Law of Torts § 20.2 (1956); Prosser, Law of Torts § 41 (3d ed. 1964). The rule is known as the "but for" rule. We recognized the soundness of the rule and applied it to the facts in Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359, 365 (1957). Moreover, the instant case was tried under the rule as is demonstrated by the trial court's instruction to the jury that "proximate cause," as the term was used in the charge, meant " * * * that cause which, in its natural and continuous sequence, unbroken by any new independent cause, produces a result, and *without which cause, such result would not have occurred * *.*" [1]

Thus the burden was on the respondent to prove by a preponderance of the evidence that the collision would not have occurred but for the excessive speed of the train.

Respondent's theory for contending that he discharged his burden of proving that the excessive speed of the train was a cause in fact of the collision is based upon the established fact that the train was traveling at the excessive speed at all relevant times prior to and at the time of the collision. From this established fact respondent argues that the jury could reasonably have inferred that: (1) if the train had been moving at a lawful speed when it tripped the wigwag signal, Hardgrave would have seen the signal sooner and thus would have had an earlier warning of the approach of the train and more time in which to avoid the collision; and (2) if the train had been moving at a lawful speed when it passed the obstructions south of the track, (a) the truck would have been across the track before the train reached the place of collision, (b) Hardgrave would have seen the train sooner and would thus have had more time in which to avoid the collision, and (c) the engineer could and would have seen the truck at a time and distance when he could have avoided the collision by stopping or decelerating the speed of the train.

The inferences which respondent contends the jury could have drawn from the evidence would supply the necessary proof of the element of cause in fact; but the important question is whether the inferences are reasonable.

Traveling at a speed of 25 miles per hour, or 36.7 feet per second, the time required for the train to traverse the 983 feet and reach the street after tripping the signal was 26.8 seconds. Traveling at a speed of 20 miles per hour, the truck was more than 500 feet from the crossing when the signal was tripped, but Hardgrave testified that he did not know whether the signal was working because he "didn't see it anyway." If the train had been traveling at a speed of 12 miles per hour, or 17.6 feet per second, 56 seconds would have elapsed between the time the signal was tripped

---

1. Emphasis added.

and the street was reached, and the signal would have been operating for an additional 29.2 seconds. But it is unreasonable to infer that one who did not see the signal from 500 feet or a lesser distance would have seen it from a greater distance.

Neither do we think it may reasonably be inferred that had the train been traveling at a speed of 12 miles per hour when it passed the obstructions, the truck would have been across the track before the train reached the place of the collision, or that Hardgrave would have seen the train sooner and would have avoided the collision. As heretofore noted, there is evidence that the point of impact was at the fifth car in the train, a distance of at least 415 feet from the front of the lead engine. Thus at a speed of 25 miles per hour the engine had traveled a distance of 649 feet from the time it passed the obstructions when the collision occurred. During the same period of time, the truck, traveling at a speed of 20 miles per hour, or 29.3 feet per second, traversed a distance of 519 feet in 17.7 seconds. In that same period of time, the train, had it been traveling at a speed of 12 miles per hour, or 17.6 feet per second, would have traversed a distance of 311 feet, and yet would have been blocking the crossing when the truck arrived. But respondent argues that testimony that the point of impact was on the fifth car was discredited and the jury did not have to believe it. The answer to this argument is that the burden was on respondent to prove facts from which the jury could reasonably infer that the truck would have been across the track before the train, traveling at 12 miles per hour, arrived; and if the testimony of point of impact be discarded, there is no proof of facts from which the inference can reasonably be drawn.

It is undoubtedly true that Hardgrave would have had more time in which to see the train after it emerged from behind the obstructions if it had been traveling at a slower speed, but his own testimony negatives any reasonable inference that he would have done so in time to avoid the collision. The train was visible at all times after it emerged from behind the obstructions at a distance of 234 feet from the street, and yet Hardgrave's own testimony is that he did not see the train until it "loomed up in front of" him, was "just right at the road," was "almost on the road," was "almost on" him, and was "just right on" him. If he was not keeping a lookout with enough care to detect the presence of the train until it was right on him, it is not reasonable to infer that he would have used more care if the train had been traveling at a lesser speed.

■ Whether the jury could reasonably have inferred that the engineer could and would have seen the truck if the train had been traveling at a speed of 12 miles per hour when it was 234 feet from the crossing is a more difficult question. The jury did not have to believe the testimony of the engineer that he never saw the truck; but rejection of the testimony does not supply evidence that he did see it, or that he would have seen it if the train had been moving at 12 miles per hour. When the circumstances in evidence are sufficiently strong, a jury may reasonably infer that a train operator saw a person approaching, or on, or near the track, in spite of his testimony that he did not do so. See Brown v. Griffin, 71 Tex. 654, 9 S.W. 546 (1888). Cf. Creech v. Thompson, 156 Tex. 561, 297 S.W.2d 817 (1957). But the circumstances disclosed by the evidence in this case—obstructed view, etc.—are such that to infer that the engineer would have seen the truck in time to have avoided the collision if the train had been traveling at a speed of 12 miles per hour would be pure speculation.

■ We hold that none of the inferences suggested by the respondent may reasonably be drawn from the evidence, and thus that respondent did not discharge his burden of proving that the excessive speed of the train was a cause in fact of the collision and respondent's injuries; that is,

there is in the record no evidence of probative force that but for the excessive speed the collision would not have occurred.

■ Having held that none of respondent's suggested inferences can form a sound basis for the jury findings upon which liability of Texas & Pacific must be predicated, we must look to the briefs of the parties in the court of civil appeals to see if the judgment of that court reversing the judgment of the trial court and remanding the cause for a new trial can be affirmed on any other ground. Walker v. Texas Employers' Ins. Ass'n, 155 Tex. 617, 291 S.W.2d 298 (1956). Respondent presented a point of error in the court of civil appeals asserting that the judgment of the trial court should be reversed and the cause remanded because of refusal of the trial court to submit issues to the jury inquiring whether the trainmen failed to keep a proper lookout and whether such failure was a proximate cause of the collision. We hold that the trial court did not err in refusing to submit the issues. The failure of the trainmen to see the truck when it was visible at all times after the train was within 234 feet of the crossing raised an issue of failure to keep a proper lookout, but there is no evidence that such negligence was a proximate cause of the collision. Considering the speed of the train, the reaction time for applying the train's brakes, the distance to be traveled and the absence of evidence of rate of deceleration of a train of the same type when traveling at a speed of 25 miles per hour, we hold that there is in the record no evidence from which the jury could reasonably have inferred that but for the failure of the trainmen to keep a proper lookout the collision would not have occurred.

The judgment of the court of civil appeals in this severed cause is reversed and the judgment of the trial court is affirmed. Respondent is granted fifteen days from this date in which to file an additional motion for rehearing.